Thank you, your honors, and may it please the court. Bradley Hamburger for defendant and appellant KM Industrial. I intend to reserve at least five minutes for rebuttal. This appeal under the Class Action Fairness Act concerns a narrow question, whether plaintiff's complaint puts at issue at least five million dollars. The district court remanded this case because it concluded that KM needed to put in evidence regarding the length of shifts that the putative class members were. That ruling I submit was erroneous for two reasons, and this court should reverse, but at a minimum the court should vacate the remand order and instruct the district court to give KM an opportunity to provide the evidence that it believed was lacking. I'd like to start with the nature of plaintiff's challenge in his motion to remand. The plaintiff, and this is really important because there's a critical distinction under this court's case law between two types of challenges a plaintiff can make in a motion to remand. As the Salter case from this court just last month explained, one type of challenge a plaintiff can make is a factual challenge. Essentially, this type of factual challenge contests the truth of the allegations that the defendant has made, contests the evidence, the factual basis that the defendant has put into the record. It's typically done, as the Salter case explains, through the submission by the plaintiff to the district court. The plaintiff has to present evidence that is contrary to the defendant's allegations of evidence. Is that the only way it can be done? How do they put them to their burden of proof? I understand that, you know, for pleading purposes they don't have to come forward, you know, with actual evidence for the notice, but once the notice is filed and there's a challenge, what triggers a factual attack? Do they have to present evidence or can they do it some other way? Well, the Salter case and the case that relied on the Leike case said typically it is done with evidence, but typically, yes, but I do agree that there could be scenario, and I think at minimum what the plaintiff needs to do is needs to come in and say I believe that's an incorrect assumption, allegation that you're making. So, for example, haven't they, well now let me stop you, haven't they done that here? I don't believe they have. What they did in their motion to remand was that they looked at the evidence that we had put in the record, and what they did was they essentially said that's not enough. They had them come in and say we believe that 50 percent of the class members worked part-time. They didn't say, you know, the majority of class members work part-time, and so you're assuming something that is incorrect, and it could have been very easy. I mean, the plaintiff here could have put in a declaration or even not, maybe just a statement in their motion saying, you know, the plaintiff's co-workers, he saw his co-workers, they all were part-timers, and there wasn't any sort of assertion like that. So, I submit that, you know, at minimum, so they didn't come in and say you did it wrong, and you could have done it another way. Yeah, I think that's correct. I mean, they didn't come in and say, but they basically said what we put in wasn't false and incorrect. It just wasn't sufficient. Yeah, it wasn't your case. Yeah, so they basically, why isn't that a, why are they not then disputing your facts? Well, because what they're doing there is they are, they're not saying our facts are wrong. They're saying our facts are insufficient to establish the amount of controversy, and this is kind of a, I know it can be a bit of a tricky distinction. Didn't they also say your facts are not true? I don't believe they said they're not true. I think in the motion to remand, they said our assumptions that we were relying on, you know, assumptions that they said were not grounded in their complaint, which the district court disagreed with them on that, and then they said that there should have been more detail in the declaration, and that's essentially what- I don't think it was just detail. It was like you were miscounting people who were having worked full-time and multiplying, and when they, in fact, worked part-time, or they didn't work a full year, and you attributed to them a full year. I think that's what they were saying, which meant that your facts that you put as a justification for removal aren't true because you're not accurately reflecting the workplace. Yeah, I respectfully disagree with that they ever went to the step and said they're untrue. They said that those were insufficient, that didn't meet the bar, and I think it's very close to what happened in the Salter case, but even putting that aside, and even if the court, you know, believes that there was a factual challenge here, that isn't the end of the matter because, as the Ria's case makes very clear, a defendant doesn't have to come forward with evidence on all factors related to the amount of controversy calculation. Instead, a defendant can come forward with assumptions, Ria says this specifically, as long as they are the complaint, and the district court here said no, that isn't what we could, what was necessary. What was instead necessary was actual submission of evidence of shift length, but I think if you take a look at the complaint, well, but isn't that, wasn't the judge really saying that you didn't come forward with a reasonable way of doing this? Well, I think if you look at the order, he says we didn't come forward with evidence, and he says there's an evidentiary gap and that we need to fill the evidentiary gap, and I would submit that we can fill the evidentiary gap, but putting aside that, if given an opportunity, I can represent the court that we could and we would have filled the evidentiary gap, as we explained in our brief, there was, we believe that we weren't given a fair opportunity, that this was the thrust of plaintiff's argument, we don't think he ever made a factual challenge, and on the shift length in particular, that came, you know, mainly in the reply brief, there wasn't a hearing, but putting that aside, you can fill, and under a Ria's decision, you can fill the evidentiary gap with assumptions, and so if you look at the allegations in the complaint here, the allegations repeatedly talk about, with respect to meal breaks and rest breaks, of continual regular denials of meal breaks and rest breaks on behalf of the plaintiff and the entire putative class. I know, but don't they have to be reasonable assumptions? And I think they are, I think if you look at the complaint, the thrust of the entire premise of the complaint is that there were policies and practices related to security screening, related to donning and doffing, that these employees were not provided with their meal and rest breaks that they're entitled to under California law, and inherent in that allegation is that they were actually entitled to meal and rest breaks in the first place, which under California law, you get entitlement to meal and rest breaks depending on your shift length. There's no allegation here that, you know, this has affected only a small portion of the class, that this is a class of mainly part-time workers, and I would submit that if that was the case, our assumption would not be reasonable. If there was some reason to believe, either based on the allegations in the complaint, or based on the plaintiff's statements in their motion to remand, or based on any evidence the plaintiff puts in, that this was a majority or even a partially part-time workforce, I could understand why our assumptions might not be reasonable. But when you're faced with a complaint... What kind of business is KMI in? Yeah, KMI is an industrial cleaning business, and so they have clients that contract with, that need cleaning of things like oil tankers and other industrial operations. So these are big jobs. I don't think it's... They're not the kind of, you know, job that necessarily would be a part-time job. This is... They go out, they wear equipment, and then this is... Some of this is based on... Some of this is outside the record, but a lot of this is based in the complaint, because they talk about the donning and doffing, they talk about the security screening. They even allege that it takes 15 minutes to take... Put on the gear and take off the gear. So the idea that this is a workforce of people that are working three hours, not even getting one rest break, I don't think is a reasonable, you know, assumption based on what was alleged. And given the nature... One more point on this. The plaintiff in this briefing has focused a lot on the definitions of the two subclasses for meal breaks and rest breaks, and says, well look, those subclasses incorporate shift length. Well, I'll first submit that that is a very common pleading device. What happens is plaintiffs often make subclasses for each claim, and they just put in the elements of the claim, and those, you know, the shift lengths are elements of the claim. But putting that aside, the factual allegations, as I mentioned before, and this is, for example, ER 81, say, talk about the plaintiff and the putative class, that's a group of employees that were suffering these alleged meal break and rest break violations. And then the last thing I'll note on this is, there is a UCL class here, a UCL subclass, which is not limited to just people who worked a specific shift, but it basically takes all of the allegations in the complaint and says we can recover under California's UCL, which is a permissible thing for the California Supreme Court. So I think if you want to parse the complaint, this idea that the subclasses are the problem here and undermine our assumptions is just not accurate. And I would like to reserve the rest of my time for rebuttal unless the court has a question. Yes, Your Honor. May it please the court, Sean Sattar on behalf of the appellee. If this panel would reverse the trial court's remand order, what would occur is we would see a massive influx of cases being removed to federal court. Federal courts are courts of define the class definition to include only persons who work to shift in excess of five hours. And that's pertaining to the meal break claim and only persons who work to shift in excess of three hours. That's black and white. That's not even in our removal. That's in the complaint. Standard fire and all of the Supreme Court cases, all of the Ninth Circuit cases as a prerequisite. You only include the putative class defended. But they can rely on reasonable assumptions. We've said that. And why isn't it a reasonable assumption? And given the nature of the industry and the work that everyone who's in the class worked over three and a half hours, that the nature of the industry and the nature of the work is not part of the evidence. It's not part of the record. And what we're dealing with in this case is is a damages exposure that just barely went over the five million mark. They have 100 percent of all non-exempt employees having class membership in this class. Had they had an assumption, a quote unquote reasonable assumption of 20 percent, we would clearly not be within the five million dollar mark. 30 percent, 40 percent, 50 percent, 60 percent. Excuse me. We would have to have an assumption of 80 to 90 percent of all employees that they have self-identified, that they had notice of. And your honor, I would like to point out another issue and distinguish Salter. Salter, they presented summary judgment type evidence in the form of a declaration demonstrating not generally, but to the penny, what the class was owed if you take the factual allegations in the complaint as true. When you take a look at Landers, in Landers they focused on off the clock work, which there is no record of. They focused on rest break violations, which there is no record of. These claims that we've identified are very articulate. So what specifically are the assumptions that they've made that you challenge and that you think that they now need to bring proof to support? Well, as a threshold issue, I would argue that any additional proof that they could bring at this time is foreclosed. Once, you know, the law is clear, once a party seeks a remand and they contest the notice of removal, they have to provide the summary judge type, the summary judgment type evidence. You can't provide multiple bites of the apple throughout the course of litigation. My question is predicate to that. It is what did you assert and challenge in order to trigger the factual presentation duty? Because you have to contest it in order to make them carry their burden. What were exactly, tell me what were the assumptions you were challenging that they then had a burden to respond to and failed to meet? We feel that we identified the allegations in, you know, in a chart that we provided to the court on pages 14 through 17 in our reply brief. Repetitively identifies the case law, repetitively explains that its defendant's obligation to provide summary judgment type evidence to the trial court to substantiate their position and what's unique to this case as opposed to Landers. Well, maybe you could, maybe you could answer Judge Collins question. The KMI said, these are our assumptions. In order to make this into a factual dispute, you had to say something was, some of these assumptions were unreasonable. Which ones were they? You know, and I apologize. I wasn't trying to be evasive or not answering the question. I just wasn't clear on what was being asked of me. The assumption was that every single non-exempt employee who worked in the state of California, the 442 persons all worked shifts over five hours to be eligible for a meal break. And did you say, did you say, and that's unreasonable because? That's unreasonable because they, I think the court found that it was unreasonable and I've handled hundreds of wage and hour class actions. There's, there's many times that, you know, there are part-time, many part-time employees that are not eligible for a meal break. It's possible that many or most of those individuals were eligible for a rest break, but many times companies specifically, they schedule their shifts less than five hours so that they don't have to take the meal break and they just go home. That's their business model. I'm not particularly familiar with defendant's business model. In terms of submitting evidence, they have all the payroll records. So other than the, including all 442 over five hours, what other assumption did they make that you can test? Theoretically, the assumption of a 20% violation rate for the meal break could also be problematic. The rest break violation, I think is reasonable because there are no records. There's ninth circuit authority, obviously, where you can make some sort of a reasonable assumption. In all of those cases, I believe dealt with items or of damages where it's really hard to articulate and, you know, you're, you're really estimating. But when it comes to a meal break, defendant has the records and we cited to Labor Code 512, defendant must keep track of all hours worked. They must keep track of the start time. Well, how does that make the, how does that make the assumption unreasonable? It makes it unreasonable when the defendant has the records and they can pinpoint and identify the number of violations based upon the records. So do you object to going back to the district court now and producing these records? I do object to it, your honor. There's no basis for it. The way I read Judge Oreck's order was that the complaint was the assumptions were reasonable because they have the actual hours and it way overstates, for example, people who were eligible for overtime and didn't get overtime. And Judge Oreck basically said, I'm not going to fill in these gaps if KMI who has the knowledge as to what's going on, isn't going to do it. I'm just going to remand. Is that right? Your honor, I'm not, I'm not going to dispute obviously what Judge Oreck's ruling is. At this point, it's quite possible that the defendant has evidence to establish capital jurisdiction, but I don't think that it's a good precedent to give them multiple bites at the apple when they fail to do it at the trial court level. It seems to me, first of all, I find this case extraordinarily frustrating that we're fighting about this and we're dealing only in assumptions. And I, as an appellate judge, have to sort of scramble through here. I didn't go on Google to figure out what is really going on. What's the nature of this business? Who's working how many hours? It's just not in the record. And it seems like a huge waste of our time because it's factual and it certainly is within KMI's ability to actually state what's the truth about potential maximum recovery under these claims for this particular class. They didn't do it. And they stood on their position that they don't have to do. So that's what we're really deciding here is what level of showing is expand the class? Or are you entitled to force them at night to really identify actual numbers? Your Honor, I think we wouldn't be at the court of appeal level if they could demonstrate at all of these 442 persons that they identified. I'm not going to even refer to them as class members because, again, we've carefully circumscribed the class definition to include persons who work shifts in excess of five hours, persons who work shift in excess of three hours. And as lawyers and judges, we make rulings based upon the evidence. And there is no evidence for other than plaintiff to be eligible for meal. It's probable. And we're dealing with even if we have an estimate of 50 percent of these people being class members, they still don't meet the five million mark. And they had their shot. We disputed it in the notice of removal. And, you know, one may argue that they didn't even comply with standard fire and all of these other cases that say, look, it's defendant's burden to provide evidence for the class and to provide evidence for the class. The threshold issue is you need to demonstrate who is within the class. And they haven't done that. And that's a foundational issue that they haven't met. The district court seemed to assume that if the, you know, if they had substantiated the assumption on, you know, 3.5 or over five hour shifts, that the that at that point, then the agree with that. I don't disagree with that. OK. Any any other questions by by the panel? OK, we will submit. Hey, Mr. Hamburger. Thank you, your honors. So I'd like to start off with Judge Ward Law's concern about we're relying just on assumptions. And I understand it can be frustrating. But under the we're at the pleading stage under their reassertion, it's specifically held that you do not need evidence on every factor, every stage, your amount of controversy requirement. You can rely on reasonable assumptions based on the complaint. In fact, that's going to be necessary given calculating violations of the law. That's looking at what is put in controversy by the complaint. I think if you look at the complaint. Well, what Judge O'Rourke says is that KMI doesn't address the problem of shifts or hours, but instead states that its calculation is based on the theory of averages. If some class members did not separate any violations, separate more. And he just found that I'm persuasive because there was no indication of how many punitive class members work shifts that would entail them to a meal or a risk break. There was no evidence so. He just found you didn't come forward with evidence on the key factors to support your calculation of the amount in controversy. So so and that is the problem because the teaching of Arias is is that you can support your amount of controversy requirement with evidence and reasonable assumptions based on the complaint. And if you look on the prior page of his decision, you know, Judge O'Rourke rejects almost all of plaintiff's arguments, says our 20% violation rate, given the nature of the allegations in the complaint, was conservative. We're not claiming here. Everybody, all 420 class members, never got a meal break, never got a rest break. Every day they worked. It's a 20% violation rate. But then when he got to the shift, the problem was is he erred in requiring us to put forth evidence, which again, we will do if you remand the case and give us that opportunity to do. And we honestly did not believe that this was the argument the plaintiff was making based on his motion. If you look at Judge O'Rourke, he cites docket number 29 ER5. That's the reply brief of the shift length argument. And for the first time really contested it. There wasn't a hearing. If there had been a hearing, we would have said, Your Honor, we can give you this evidence. This is an issue, you know, I think we've heard plaintiff's counsel doesn't really know whether these people actually work part time or full time. His client probably does. But in any event, if you look at the actual, what Judge O'Rourke should have done, you know, putting aside asking us to put in more evidence and give us that opportunity. If you look at the complaint, ER138, paragraph 24. And this is just one of many allegations that are similar to this. Defendants maintained a policy and practice requiring plaintiff and the putative class to arrive at their workstations within the 30 minutes that was allotted to them, talking about meal breaks. So it said plaintiff and the putative class, you know, and then they say accordingly plaintiff and the putative class, this is paragraph 25 of the complaint, were provided with shortened meal periods. So it doesn't say plaintiff and the meal period subclass. There's a litany, if you look at the first part of the complaint, starting ER138, ER139, et cetera, where they're talking about the whole putative class. So we assumed, when we put in the number of class members, we did put in evidence here. We did start speculating how many class members are here, how many work weeks there are. We put in a declaration. And what the declaration assumed was that they were bringing claims on behalf of the entire putative class. They were alleging these policies and practices that were regular routine. And then given the nature of the work, there's not... Excuse me. So in the affidavit, these paragraphs in the complaint are mentioned. These paragraphs in the complaint are cited in our notice of removal. The affidavit was part of the notice of removal, but we relied on these. This is why we believe that when we were identifying the putative class with our client, that included all of the people, there wasn't any suggestion that there was isolated incidents with some members, that this was a workforce that worked part-time. If there had been, we would have, of course, substantiated that. And we still could do that now. I also note that plaintiff's counsel said there's no indication about the work that was done here. That's just incorrect. ER144, paragraph 66, it mentions donning and doffing, cleaning tanks. And there's not a lot. I recognize that, Judge Wardlaw, but there is some. And I think the simplest thing, if the court is inclined to reverse it, is to remand and give us the opportunity, assess this based on the reality of what actually happened here, which can easily be done in a very quick fashion. Thank you, Your Honors. Thank you, counsel. Harris v. CMI is submitted, and this session of the Court is adjourned for today. Thank you very much. Thank you. This Court for this session stands adjourned.
judges: Wardlaw, Eaton, Collins